# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60526-CIV-COHN/SELTZER

BELLA SUPPA,

    Plaintiff,

v.

COSTA CROCIERE S.p.A.

    Defendant.
_____/

## DEFENDANT'S MOTION FOR DISMISSAL WITH PREJUDICE AND SANCTIONS FOR PLAINTIFF'S PERPETRATION OF A FRAUD UPON THE COURT AND SUPPORTING MEMORANDUM OF LAW

    DEFENDANT, COSTA CROCIERE S.p.A., by and through its undersigned counsel and pursuant to the applicable Federal Rules of Civil Procedure, hereby files this Motion for Dismissal with Prejudice and Sanctions for Plaintiff's Perpetration of a Fraud Upon the Court, and as grounds therefore, states as follows:

    1.    The present action involves a maritime personal injury claim arising out of an injury Plaintiff allegedly sustained while traveling aboard the passenger vessel *Costa Magica*. [DE 9].

    2.    Plaintiff is seeking damages for alleged injuries to her left shoulder, left arm, and the right side of her body, including, but not limited to, her right leg, right foot, and right ankle. Following the accident, Plaintiff underwent a partial left shoulder replacement which she claims was totally necessitated by the shipboard accident.

    3.    Defense counsel deposed Plaintiff on February 11, 2008.



4. During Plaintiff's sworn deposition, Plaintiff was asked directly whether she had ever had any previous medical problems with either of her shoulders, joints, or any kind of accident that required any kind of medical treatment. Plaintiff flatly responded that she had *never* had any prior shoulder or joint pain of any kind:

> Q. Did you ever have any problem with either shoulder before the accident?
> A. No.
>
> Q. Did you ever go to a doctor for any kind of a joint issue, shoulder, knee, wrist, hip --
> A. No.
>
> Q. -- before the accident?
> A. No, no. Not that I recall.

Deposition of Bella Suppa, 57:13-21.

5. Additionally, Plaintiff was specifically asked if she had ever had any shoulder pain before the accident. Plaintiff responded that she had not, and further testified that she had not taken *any* medicine for shoulder pain:

> Q. Okay. Before the accident had you ever had any shoulder pain before?
> A. No.
>
> Q. Were you ever taking any medication for joint pain --
> A. No.
>
> Q. -- whether it be aspirin, cartilage vitamins, Osteo Bi-Flex?
> A. Not particularly for my shoulders or anything, no.
>
> Q. What were you taking?
> A. I might have had a headache. I took something, you know.

Deposition of Bella Suppa, 103:23-104:10.

6. Plaintiff was also asked if she had ever been a patient of Dr. Burton Wollowick prior to her accident on April 21, 2006. Again, Plaintiff flatly denied ever being a patient of Dr.



Wollowick prior to her accident and explained that she only knew him because her sister used to work with him and her husband "had to go to him":

> Q. Yes, ma'am. And when was the next time you followed up with a doctor?
> A. I couldn't see a doctor till Monday.
>
> Q. This accident happened on a Friday, you said before?
> A. Yes.
>
> Q. And who would that have been?
> A. Dr. Wollowick.
>
> Q. Had you seen Dr. Wollowick before?
> A. No.
>
> Q. How did you know him?
> A. I've known him a long time. He worked with my sister in Unity Hospital in Brooklyn.
>
> Q. What did he do for her?
> A. No, he worked with her.
>
> Q. Worked with her? What did your sister do?
> A. Assistant administrator.
>
> Q. Had you seen him on a professional basis before?
> A. Before this?
>
> Q. Yes, ma'am.
> A. My husband had to go to him.

Deposition of Bella Suppa, 99:7 - 100:6.

7.  Plaintiff's medical records, provided by her treating physician, Dr. Burton Wollowick, however, paint an entirely different story.[1] Her medical records show that she has been seeing Dr. Wollowick since at least as early as October of 1998. Moreover, Plaintiff has an extensive history of joint pain and treatment with Dr. Wollowick as outlined below.

---

[1] Costa notes that these are records from only one of Plaintiff's physicians.



8.    As early as October 1998, Plaintiff began seeing Dr. Burton Wollowick, of the Boca Raton Orthopedic Group, for various ailments and injuries:

    a. On October 26, 1998, Plaintiff went to the Boca Raton Orthopedic Group, complaining of pain and swelling in her right hand. See Exhibit 1.

    b. On January 24, 2001, and February 14, 2001, Plaintiff went to the Boca Raton Orthopedic Group, complaining of ongoing pain and swelling in her right knee. See Exhibit 2.

    c. On February 17, 2001, Plaintiff underwent an MRI of her right knee. See Exhibit 3.

    d. Plaintiff went back to the Boca Raton Orthopedic Group, and was treated by Dr. Wollowick for additional consultations and evaluations regarding her complaints of right knee pain and swelling on February 21, 2001, February 26, 2001, March 16, 2001 and March 23, 2001. See Exhibit 4.

    e. On November 11, 2002, Plaintiff complained of pain in her left shoulder, the very same shoulder that is in issue in this litigation. She claimed difficulty in abduction and rotation. See Exhibit 5.

    f. On January 20, 2003, Plaintiff again complained of pain in her left shoulder and across her hips and low back area. Dr. Wollowick felt her symptoms were due to "overuse syndrome." See Exhibit 6.

    g. On April 2, 2003, Plaintiff complained of a crackling sensation in the left shoulder and pain in the left buttock, left groin, and down the left leg. Examination of her left shoulder revealed some restriction of mobility. See Exhibit 7.



MCALPIN CONROY
ATTORNEYS AT LAW

    h. On April 25, 2003, Plaintiff returned, complaining of continued pain in her left shoulder. See Exhibit 8.

    i. On June 22, 2004, Plaintiff complained of pain over the lateral side of her right elbow. See Exhibit 9.

    j. On November 8, 2004, Plaintiff complained of acute and severe low back pain which radiated into the side of her hips. See Exhibit 10.

    k. On December 15, 2004, Plaintiff returned complaining of "quite a bit of pain in the low back area, and it precludes her from doing any dancing activities." See Exhibit 11.

    l. On December 24, 2004, Plaintiff again returned complaining of pain along both sides of her hip and pain in her back area, stating that she has not been able to rehearse for a dance festival due to the pain. See Exhibit 12.

    m. On December 29, 2004, Plaintiff returned and was informed she had a herniated disc at the L4-5 level on the left side, with marked degenerative changes at the intervertebral discs. See Exhibit 13.

    n. On March 28, 2005, Plaintiff complained of pain along her flanks bilaterally. See Exhibit 14.

    o. Also, on March 31, 2005, Plaintiff went to the Boca Raton Outpatient Surgery and Laser Center complaining of low back pain. See Exhibit 15.

    p. On November 11, 2005, Plaintiff saw Dr. Wollowick for pain and swelling in the right foot. See Exhibit 16.

9. Furthermore, when asked about previous medical procedures, Plaintiff denied any surgeries other than one for a gall bladder:



> Q. Have you ever had any medical procedures performed before? For example, arthroscopic surgery or diagnostic surgery in any part of your body? Anything like that?
> A. Gall bladder many years ago.
>
> Q. Okay. Anything else?
> A. No.

Deposition of Bella Suppa, 59:8-14.

10. Again, Plaintiff's medical records show that she had had a number of surgeries prior to the accident:

    a. For example, on January 24, 2001, Plaintiff filled out a Patient Information Form at the Boca Raton Orthopedic Group, on which she indicated that she had undergone gall bladder surgery, a breast reduction due to cysts and her tonsils removed. See Exhibit 2.

    b. On March 31, 2005, the Boca Raton Outpatient Surgery and Laser Center prepared a consultation report on Plaintiff, which listed a past surgical history of "wrist surgery, cholecystectomy, bladder surgery, and colonoscopy." See Exhibit 15.

11. Indeed, in her deposition, Mrs. Suppa blamed the accident for her inability to engage in community theater, play golf and other physical activity.

> Q. Maybe we're not communicating. You told me that before the accident you were on these shows.
> A. Yes.
>
> Q. You were on several of them.
> A. Yes.
>
> Q. Let me finish my question. And then afterwards you weren't able to do the shows?
> A. Right.

Deposition of Bella Suppa, 14:14-23.



12. However, the records clearly show over ten years of general joint, knee, shoulder, and back pain which directly impacted her lifestyle (i.e., "dancing") well *before* the shipboard accident. See Exhibit 4, 6, and 12 ("She has been rehearsing for her dance festival, and has not been able to do that properly because of the pain that she has.").

13. Also, in her answer to interrogatories concerning previous injuries or illness, Plaintiff responded: "I do not recall ever having an accident or injury claim in my life. Prior to this incident, I was in excellent health." See Answer to Interrogatory No. 11, attached as Exhibit 17.

14. As clearly set forth above, Plaintiff perpetrated a fraud on the Court by providing false testimony, under oath, with respect to material issues in this case.

## MEMORANDUM OF LAW

The United States Supreme Court has recognized a court's inherent power to impose the sanction of dismissal in response to abusive litigation practices. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 632 (1962); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980) (dismissal of a lawsuit is within a court's discretion); *Vargas v. Peltz*, 901 F. Supp. 1572, 1579 (S.D. Fla. 1995) ("federal district courts of this nation possess the inherent power to regulate litigation and to sanction litigants for abusive practices."); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) ("federal district court possesses the inherent power to deny the court's processes to one who defiles the judicial system by committing a fraud on the court."); *Sun World, Inc. v. Lizarazu Olivarria*, 144 F.R.D. 384, 389 (E.D. Cal. 1992) ("Where...a fraud has been committed upon the court...the inherent powers of the court support the sanction of dismissal and entry of default judgment.").

When fraud has been committed on the court, the court's inherent powers include the



sanctions of default judgment and dismissal. *McDowell v. Seaboard Farms*, 1996 U.S. Dist. LEXIS 19558 (M.D. Fla. 1996).

Where, as here, the fraud "undermines the theory in the case, dismissal is particularly appropriate". *Vargas, supra* at 1580. As the Court noted in *McDowell*:

> A party commits "fraud upon the court" when clear and convincing evidence demonstrates that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.

*McDowell*, 1996 U.S. Dist. LEXIS 19558 at 6.

Here, Plaintiff's sole claim is personal injury to her left shoulder, left arm, and the right side of her body. Plaintiff presented herself as being in excellent health prior to her fall aboard the *Costa Magica*. By intentionally concealing this information in her deposition and offering up multiple misrepresentations that are directly related to the central issue in the case, Plaintiff has attempted to thwart the presentation of her true medical history and Costa's defense. It is also important to note that these medical records were never provided to Costa by Plaintiff's counsel; they were obtained via a third party subpoena. Without the receipt of Dr. Wollowick's records, Costa never would have known of Plaintiff's extensive prior medical problems. This indicates a conscious attempt by the Plaintiff to hide and misrepresent her extensive prior medical history in an effort to hinder Costa's defense of the claim.

In *Ramey v. Haverty Furniture Cos.*, 2008 Fla. App. LEXIS 501 (Fla. 2nd DCA 2008), the plaintiff testified at deposition that he had never had a neck problem prior to the accident for which he was claiming damages. He also claimed that he had never had a head injury. Upon learning that the plaintiff had previously complained of, and received treatment for, headaches, neck pain and lower back pain, the defendants filed a motion to dismiss the plaintiff's complaint



for a fraud perpetrated on the court. The trial court held an evidentiary hearing on the motion to dismiss at which the plaintiff testified that he did not understand that his prior treatments were for his head or neck, but only for his back pain. The trial court concluded:

> The record that's been presented to me is that this plaintiff had a continuing problem with headaches which included neck problems, which included back pain that, apparently, spanned an eight-year period of time.
>
> This is not a one-shot incident where he had a headache one time, and I think that's where the latitude that plaintiffs are allowed is if it's a one-shot thing that happened over a short period of time, that's what the case law is talking about.
>
> No, certainly, we're not required to remember every specific ailment that we've had in our lives, and certainly, a lack of memory is something that the Court should consider.
>
> \*       \*       \*
>
> This is not a situation that has been presented on this record of a one isolated or two isolated incident[s] but, as it's been represented here, an eight-year period of time of at least 13 medical entries of complaints about neck, back pain, headaches, neck pain and a variety of treatments associated therewith.

*Id.*

On appeal, the Second DCA found that the plaintiff's misrepresentations concerning his prior medical treatment were directly related to the central issue in the case and that such misrepresentations, by there very nature unfairly hamper the presentation of the opposing party's defense. *Ramey.*

Likewise, in *McKnight v. Evancheck*, 907 So.2d 699, 700 (Fla. 4th DCA 2005), the court affirmed the trial court's order dismissing a complaint for fraud where the court found that the plaintiff had lied about his extensive medical history, which had a direct bearing on his claim for damages. The medical records presented to the trial court were directly contrary to the plaintiff's



sworn testimony. *Id.* See also *Metro. Dade County v. Martinsen*, 736 So.2d 794, 795 (Fla. 3rd DCA 1999) (holding that trial court abused its discretion in failing to dismiss case where plaintiff gave sworn false statements about her accident and medical history that went to the heart of her claim and subverted the integrity of the action).

Plaintiff has an extensive medical history with the Boca Raton Orthopedic Group and Dr. Burton Wollowick in particular. Plaintiff had been to his office more than twenty (20) times *prior* to the incident alleged in the complaint.[2] Of those visits, at least fifteen (15) were for ailments or injuries that go to the heart of her claim against Costa. Plaintiff's extensive history of osteoarthritis and knee and ankle problems could help to explain reason for her trip and fall aboard the *Magica*. These prior complaints of pain and physical treatment with Dr. Wollowick are highly relevant to her claimed injuries --- indeed, Mrs. Suppa received prior treatment for *left shoulder pain* before the accident.

Plaintiff flatly denied ever seeing Dr. Wollowick on a professional basis prior to the accident, while it is clear she has seen Dr. Wollowick for at the very minimum, 10 years. The complete lack of mentioning any of these 20 visits to Dr. Wollowick cannot simply be blamed on a "lack of memory" where the Plaintiff "just forgot" a one-time ailment; this is systematic and continual treatment with Dr. Wollowick for 10 years.

Lying under oath about facts central to a party's claim and the other party's defense is egregious conduct which cannot be tolerated. The Eleventh Circuit has noted that "perjury, regardless of the setting, is a serious offense that results in incalculable harm to the functioning and integrity of the legal system as well as to private individuals." *United States v. Holland*, 22 F.3d 1040, 1047 (11th Cir. 1994). By imposing the severest of sanctions, the district court will

---

[2] Costa notes that as soon as Dr. Wollowick's recently taken deposition testimony is transcribed, it will be filed to supplement the instant motion.



ensure that the guilty party will not be allowed to profit from her misconduct.

Where as here, a party has presented false testimony under oath, the ultimate sanctions of dismissal and default are justified. *Figgie International, Inc. v. Alderman*, 698 So.2d 563, 567-68 (Fla. 3rd DCA 1997). *See also, Brown v. Allstate Insurance Co.*, 838 So.2d 1264, 1265 (Fla. 5th DCA 2003) (intentional misrepresentation as to material facts during deposition constitute grounds for dismissal with prejudice). With regard to the sanction of attorney's fees, the United States Supreme Court has noted:

> If a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party, as it may when a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.' The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of 'vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy.'

*See Belak v. American Eagle, Inc.*, 2001 U.S. Dist. LEXIS 2742 at 15 *quoting Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

Here, Plaintiff clearly provided false testimony regarding previous injuries that are directly related to the central issue in the case. In her deposition, she claimed she was in perfect health and had never had *any* prior joint, knee wrist or hip pain --- yet, we see from the records, Plaintiff has a significant history of joint, knee, and back pain including physical therapy and multiple injections. In her deposition, she claimed that she was able to participate community theater projects and various dancing activities, but was not able to so after the accident --- yet, the medical records show that she had prior problems with joint pain, swollen feet and "overuse syndrome" precluding her from some of her dancing. In her deposition, she claimed she had



*never* seen Dr. Wollowick on a professional basis prior to her injury ---- yet, we see from the records she has been seeking systematic and continual treatment from Dr. Wollowick for 10 years. In her deposition, Plaintiff denied ever having any shoulder problems whatsoever prior to her accident in 2006 --- yet, from the records, we see multiple instances of shoulder pain in the precise shoulder in which she is now claiming injury.

"It is well-settled law that a party who has been guilty of fraud and misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ the very institution it has subverted to achieve her ends." *Metropolitan Dade County v. Martinsen*, 736 So.2d 794, 795 (Fla. 3rd DCA 1999) (citations omitted). As this is a trip and fall case, the severity and existence for prior lower body joint and bone issues relate directly to the potential reasons for Plaintiff's fall. Prior complaints of pain and restriction of mobility in the exact joint injured in the shipboard accident is highly relevant to the issue of causation and the reason(s) for the partial shoulder replacement. Plaintiff's conscious and deliberate effort to hide this medical history from Costa undeniably constitutes a fraud on this Court.

WHERFORE, Defendant, Costa Crociere S.p.A., respectfully requests this Court dismiss Plaintiff's Amended Complaint with Prejudice and assess attorney's fees and costs.



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 6, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached service list in the manner specified, either via transmission Notices of Electronic Filing generated by CM/ECF and, by mail for counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

RESPECTFULLY SUBMITTED,

McALPIN CONROY
80 SW 8th Street, Suite 2805
Miami, Florida 33130
Telephone: 305-810-5400
Facsimile: 305-810-5401

By: _____
RICHARD J. McALPIN
Florida Bar No.: 438420
rmcalpin@mcalpinconroy.com
ERIK M. SAN JULIAN
Florida Bar No.: 017016
esanjulian@mcalpinconroy.com



## SERVICE LIST
*Bella Suppa v. Costa Crociere S.p.A.*

## Case No.: 07-60256 CIV-COHN

## United States District Court, Southern District of Florida

**Mr. Glen Z. Goldberg, Esq.**
Ggoldberg@goldbergandrosen.com
Goldberg & Rosen, P.A.
Mellon Financial Center
1111 Brickell Avenue, Suite 2180
Miami, FL 33131
Tel.: (305) 374-4200
Fax: (305) 374-8024
Attorney for Plaintiff, Bella Suppa
Mailed

