UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-60526-CIV-COHN/SELTZER

BELLA SUPPA,

    Plaintiff,

v.

COSTA CROCIERE, S.p.A.,

    Defendant.
_____/

**SCANNED**

### ORDER DENYING MOTION FOR NEW TRIAL

**THIS CAUSE** is before the Court upon Plaintiff Bella Suppa's Motion for New Trial [DE 195]. The Court has considered the Motion, Supplemental Motion for New Trial [DE 197], Defendant's Response [DE 199], Plaintiff's Supplemental Motion for New Trial [DE 220], the arguments and evidence presented at hearings held on July 30, 2008 and August 22, 2008, and the record, and is otherwise fully advised in the premises.

### Background and Procedural History

Plaintiff Bella Suppa fell and was injured while disembarking from the Costa Magica cruise ship, owned by Costa Crociere. Mrs. Suppa shattered her shoulder, requiring reconstructive surgery. She alleged that Costa designed, constructed, and maintained a defective and unsafe ramp, and that Costa was negligent in the manner in which they had her disembark from the ship. Following a jury trial, held from May 27, 2008 through June 2, 2008, the jury found that there was no negligence on the part of the Defendant that was the legal cause of Plaintiff's injuries, and judgment was entered

in favor of the Defendant on June 2, 2008. Plaintiff then filed the instant Motion for New Trial on June 11, 2008, with a Supplemental Motion filed on June 13, 2008.

In the original Motion for New Trial, Plaintiff argues that a new trial is warranted based on juror misconduct and prejudicial error caused by the Court's order disallowing the testimony of the Flynns regarding a similar accident. Plaintiff alleges that jurors Jeffrey Dec and Lourdes Perez misrepresented their past experience with civil litigation during voir dire, and that these misrepresentations evidence a bias against Ms. Suppa that requires that a new trial be held. In the Supplemental Motion, Plaintiff argues that a new trial is also warranted because the Court erred in denying Plaintiff's motion for continuance based on the unavailability of Plaintiff's expert to testify live at the trial.

**Factual Background**

The gravamen of Plaintiff's argument regarding jury misconduct is that jurors Lourdes Perez and Jeffrey Dec answered questions during voir dire about previous lawsuits and court actions dishonestly. During selection of the jury, both Plaintiff and Defendant had exercised all three of their peremptory challenges before reaching Ms. Perez and Mr. Dec. Neither Plaintiff nor Defendant raised any challenge for cause as to either of these two jurors.

In her responses to the juror questionnaire during voir dire, Ms. Perez stated that she had no prior civil lawsuits. However, research completed after the trial by Plaintiff's counsel indicated that Ms. Perez may have been involved in two contract indebtedness actions on January 14, 1991 and August 6, 1998, and may have had a claim of lien filed against her on June 25, 1997, as well as a foreign civil judgment entered against her on February 1, 2000. However, when Ms. Perez was questioned by Plaintiff's counsel at a

hearing held on August 22, 2008, she testified that her middle initial was not the same as the middle initials of the individuals in the records obtained by Plaintiff's counsel. Plaintiff's counsel also conceded during argument that Ms. Perez had been truthful during voir dire. Thus, the Court concludes that Plaintiff has withdrawn any concerns about Ms. Perez's truthfulness, and finds that Ms. Perez did testify truthfully during voir dire.

Plaintiff's research further revealed that Jeffrey Dec had been involved in civil litigation in a number of past cases. In his responses to the jury questionnaire during voir dire, Mr. Dec advised the Court that he had been involved in a couple of lawsuits, once as an expert witness and once related to an auto accident. With respect to the auto accident, the Court asked Mr. Dec if he hired a lawyer in that matter, and whether he was pleased with the result, and Mr. Dec responded in the affirmative to each question, stating that the case was settled out of court.[1]

However, at a hearing on Plaintiff's Motion for New Trial held on July 30, 2008, evidence introduced by the Plaintiff and confirmed by Mr. Dec showed that he had actually been involved in a number of past cases. In three prior cases, between the years 1988 and 1996, Mr. Dec had some involvement due to his employment with his father's company, John Dec General Contractors.[2] In only one of the three cases was

---

[1] The Court assumed Mr. Dec was the plaintiff in that lawsuit, and Mr. Dec did not contradict that assumption in his responses to questions.

[2] The case styles and numbers are: <u>John Dec General Contractors v. Williamson</u> (Exhibit 1, Broward County Case No. CACE88014332), <u>John Dec General Contractors v. Friedman</u> (Exhibit 4, Broward County Case No. COCE94015025), and <u>Estate of Richard Toplin v. John Dec General Contractors</u> (Exhibit Exhibit 5, Broward County Case No. CACE96014456).

Jeffrey Dec himself named as a party, and Mr. Dec testified that this case was one of the two he had disclosed during voir dire as a case in which he testified as an expert witness. When asked why he had not disclosed the fact that he was also a defendant in that case, he stated that he had not remembered being a defendant in that case. The other two cases, in which only John Dec General Contractors is named as a party, do not fall within the scope of the question posed to Mr. Dec during voir dire.

Mr. Dec was also personally involved in previous litigation with his wife, Jody Lynn Dec, in 1991, including a domestic violence case (Exhibit 2, Broward County Case No. CACE91032472) and a dissolution of marriage case (Exhibit 3, Broward County Case No. CACE91034128). When questioned about these cases at the hearing, Mr. Dec testified that the cases never went to court, and he didn't realize that divorce proceedings would be considered a "civil case" that he should have disclosed in response to the voir dire question.

Mr. Dec has also been involved in two lawsuits related to his personal finances. Records show that Bank of America obtained a civil judgment against him in 2001 (Exhibit 10), and he acknowledged that a credit card balance with Bank of America is "in collections." However, he stated he didn't recall this matter at the time of voir dire. Records also show a foreclosure action against him by Netbank (Exhibit 11, Broward Case No. CACE05018272). Mr. Dec testified that he did not believe his home had gone into foreclosure, and that he did not recall having papers served upon him, though he acknowledged that the papers could have been served on his wife without his knowledge. He also testified that he did not recall writing a letter disputing amounts owed, although a notation on the Broward County Clerk of Court Web site entry for this

case indicates such a letter was filed. The records also show that the case was voluntarily dismissed on February 24, 2006, less than two months after it was filed, and the notice of lis pendens was cancelled.

Finally, Mr. Dec has been involved in three lawsuits against his business, J. Dec Construction.[3] Records introduced by the Plaintiff show that a claim of lien was filed against J. Dec Construction by Pioneer Roofing in 1998 (Exhibit 6, Broward County Case No. CACE98018822), but Mr. Dec testified at the hearing that he had not remembered this case at the time of voir dire, did not remember it now, and does not remember ever doing business with Pioneer Roofing. Records also show a 1999 case, styled J. Dec Construction v. JJJ Construction (Exhibit 7, Broward County Case No. CACE99003528), in which Mr. Dec admitted that he played an active role, but didn't believe it was a "civil case" because it never went to court. Finally, records show another 1999 case, styled Causeway Lumber v. J Dec Construction (Exhibit 8, Broward Case No. COCE99007668), which Mr. Dec testifies he did not remember at the time of voir dire, and which he believes was a "simple misunderstanding" that was paid off. The records show that the case was voluntarily dismissed on August 24, 2000. In addition to these three lawsuits, Plaintiff's counsel introduced records showing a total of six state tax liens filed against J. Dec Construction (Exhibit 12), although Mr. Dec testified that he was unaware of these liens and does not recall receiving notice of

---

[3] Mr. Dec was also questioned at the hearing about a fourth case, April Lowrey v. Dec Construction, in Osceola County (Exhibit 9). However, Mr. Dec testified that Dec Construction was not his business, and he was not involved in this lawsuit, and Plaintiff has provided no evidence to the contrary.

them.[4]

Mr. Dec was questioned extensively at the hearing regarding the nature of the various lawsuits and his failure to disclose them during voir dire. It appeared from his responses that he only considered cases that went to court as "civil cases" that needed to be disclosed. At one point in his testimony, he stated that he "didn't believe that it was part of a civil case" with respect to the divorce proceedings against his wife (Transcript of July 30, 2008 Hearing ("July 30 Transcript"), p. 16.) He also stated, in response to a question by Plaintiff's counsel as to why he had not mentioned a case during voir dire, that "[i]t never went to court," and when the attorney attempted to clarify by asking "is the reason that you didn't mention that at the time of voir dire is you did not think that that actually was a lawsuit?" he responded "yes." (July 30 Transcript, p. 22.) In another instance, he was questioned about the two cases he had disclosed during voir dire, a suit involving an automobile accident and a case in which he was an expert witness. The attorney asked if he recalled answering that there were two cases that he was involved in, and he responded "I don't recall two cases. I recall an auto accident and one case." (July 30 Transcript, p. 13.) These responses indicate a lack of understanding as to what, precisely, constitutes a "civil case." Mr. Dec also testified on cross examination that he believed that the Court's voir dire question about "civil cases" did not encompass those cases that were brought against his father's company, John

---

[4] Though Plaintiff's counsel stated several times in argument that there were eight tax liens, the Court has found in examining the exhibits submitted that they contain a number of duplicates, and in actuality, records of only six separate liens were introduced at the hearing. These liens date from 5/8/2006 to 8/7/2007, and the liens are for varying amounts between $201 and $236.

Dec General Contractors. (July 30 Transcript, p. 29.) Mr. Dec further testified, on both direct and cross examination, that he had been an impartial juror (July 30 Transcript, p. 28, 31), and that he had no intent to deceive the Court or the lawyers about his prior litigation history (July 30 Transcript, p. 29).

**Legal Standard**

To obtain a new trial based on juror misconduct during voir dire, the moving party must "1) demonstrate that a juror failed to answer honestly a material question on voir dire, and then 2) show that a correct response would have provided a valid basis for a challenge for cause." United States v. Carpa, 271 F.3d 962, 967 (11th Cir. 2001).[5] The Eleventh Circuit has interpreted the Supreme Court's holding in McDonough Power Equipment, Inc. v. Greenwood[6] as requiring that the Court first make a determination as to whether the juror's answers were honest, then evaluate whether bias has been shown that would disqualify the juror. Carpa, 271 F.3d at 967.

The Eleventh Circuit requires a showing of actual bias before a new trial may be granted. BankAtlantic v. Blythe Eastman Paine Webber, Inc., 955 F.2d 1467, 1473 (11th Cir. 1992). This requirement is consistent with the Supreme Court's holding in McDonough, where the Court noted that "[t]he motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." 464 U.S. at 556. "Bias may be shown either by express

---

[5] Although Carpa is a criminal case, its analysis and statement of the relevant legal standards is based on the Supreme Court's decision in McDonough, which is a civil case. Courts apply the same test in both civil and criminal cases. See United States v. O'Neill, 767 F.2d 780, 785 (11th Cir. 1985).

[6] 464 U.S. 548 (1984).

7

admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed. A juror's dishonesty is a strong indication of bias." Carpa, 271 F.3d at 967 (*citations omitted*). If the Court concludes that the juror was actually biased, the juror's inclusion on the jury can never be harmless error. Id.

**Factual Findings and Analysis**

At the outset, the Court notes that the various omissions made by Mr. Dec in his response to the voir dire question regarding past civil litigation are troubling. In total, there are four cases involving Mr. Dec, personally, as a party, and three cases involving Mr. Dec's company as a party, as well as six tax liens against Mr. Dec's company, that were not disclosed to the Court during voir dire.[7] However, it appears from Mr. Dec's testimony that he either forgot these cases at the time of voir dire, or did not understand that they fell within the definition of "civil cases" because they never went to court. Plaintiff's primary argument against this inference is that Mr. Dec disclosed his auto accident case, but that case never went to court either, and was possibly settled before suit was even filed. However, even at the hearing, Mr. Dec attempted to clarify that the auto accident was not a "case," stating "I don't recall two cases. I recall an auto accident and one case." Based on Mr. Dec's testimony and demeanor at the hearing, and the explanations he provided for the omissions, the Court concludes that these were most likely innocent omissions, due to his not remembering or not understanding

---

[7] Additionally, Mr. Dec was also named as a party in one of the cases against his father's company, Estate of Richard Toplin v. John Dec General Contractors, but he did disclose his role as an expert witness in that case. However, he did not remember and disclose that he had also been a party, leading to further concern.

8

the full scope of the question, rather than some nefarious attempt to gain the trust of Plaintiff's counsel so he would be chosen for the jury due to his bias against Plaintiff Bella Suppa. Considering all the evidence, the Court cannot conclude that Mr. Dec's voir dire responses included intentional falsehoods, or that he had any actual bias against Ms. Suppa. Because the burden is on the Plaintiff to prove the dishonesty of the juror, and the Court concludes that this burden has not been met, a new trial is not warranted in this case based on the alleged juror misconduct.

Plaintiff also argues in her Motions that a new trial is warranted based on the Court's errors in disallowing the testimony of the Flynns and denying a continuance so that Plaintiff's expert could testify live at trial. Because the Court concludes that there was no error in these rulings, a new trial is not warranted on these grounds.

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff Bella Suppa's Motion for New Trial [DE 195], Supplemental Motion for New Trial [DE 197], and second Supplemental Motion for New Trial [DE 220] are **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 26th day of August, 2008.

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record